UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 3/30/2026
```

---

DRITA HAXHIJAJ-SAYEGH,

               Plaintiff,

-against-

THE CITY OF YONKERS, *et al.*,

               Defendants.

No. 24-CV-3622 (NSR)

**OPINION & ORDER**

---

NELSON S. ROMÁN, United States District Judge:

Plaintiff Drita Haxhijaj-Sayegh ("Plaintiff") brings this action against Defendants City of Yonkers, Yonkers School District, Robert C. Dodson Elementary School ("Dodson Elementary"), Isabella Hernandez ("Principal Hernandez"), Romulo Ramirez ("Principal Ramirez"), and Dr. Edwin M. Quezada (collectively, "Defendants"), alleging violations of discrimination pursuant to Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e–2000e-17; discrimination and retaliation under the New York State Human Rights Law ("NYSHRL"), N.Y. Exec. Law §§ 296(1) and 296(7); and discrimination by aiding and abetting under NYSHRL, N.Y. Exec. Law §§ 296(6). Presently before the Court is Defendants' motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). (ECF No. 29.)

For the following reasons, Defendants' motion to dismiss is GRANTED.

## FACTUAL BACKGROUND

The following facts are derived from the Complaint (ECF No. 1, "Compl.") and Plaintiff's memorandum of law in opposition to Defendants' motion to dismiss (ECF No. 34, "Pl. Opp.") At this stage, these facts are accepted as true and construed in the light most favorable to the Plaintiff. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Plaintiff was hired as a probationary Special Education teacher at Dodson Elementary, part of Yonkers Public Schools ("YPS"), in September 2018. (Compl. ¶ 18.) She completed the 2018–2019 academic year with positive evaluations. (*Id*. ¶ 19.) During the 2019–2020 academic year, Plaintiff went on maternity leave in January 2020 and returned on April 27, 2020. (*Id*. ¶¶ 21, 23.) At that time, Dodson Elementary operated under COVID-19 restrictions, and teachers and students attended classes remotely. (*Id*. ¶ 23.) This allowed Plaintiff, who had recently given birth to her child, to pump and express breast milk from home without requesting an accommodation from her employer for the remainder of the school year. (*Id*. ¶ 24.)

In September 2020, Plaintiff returned to Dodson Elementary for the 2020–2021 school year, while students remained remote. (*Id*. ¶ 25.) To pump and express breast milk, Plaintiff would lock her classroom door, cover the windows with curtains, and post a sign to ensure privacy. (*Id*. ¶ 26.) Principal Hernandez subsequently informed Plaintiff that she was not permitted to lock the classroom door or post a sign during pumping. (*Id*. ¶ 27.) Later that month, Plaintiff and Principal Hernandez agreed that Plaintiff would receive classroom coverage so she could express breast milk when students returned to campus. (*Id*. ¶ 28.) Sometime thereafter, Plaintiff contracted COVID-19, which required her to quarantine. (*Id*. ¶ 30.)

In October 2020, after students returned to the classroom, Plaintiff was able to pump during prep time (9:30–10:00 a.m.) and sometimes during lunch (11:00 a.m.–12:00 p.m.). (*Id*. ¶¶ 32–33.) Because Plaintiff was not permitted to lock her classroom door, it became difficult for her to pump regularly. (*Id*.) She pumped less frequently over time due to reduced coverage, which caused her physical pain, discomfort, and humiliation, including incidents in which milk was expressed onto her blouse in front of students and staff. (*Id*. ¶ 36.)

Plaintiff subsequently spoke to Principal Hernandez concerning the lack of classroom coverage as agreed, but nothing positive resulted from the discussion. (*Id*. ¶ 38.) Between October and December 2020, Plaintiff sought assistance from the Yonkers Federation of Teachers ("YFT") regarding insufficient coverage to accommodate her ability to breast pump. (*Id*. ¶ 39.) In late November 2020, Plaintiff contracted COVID-19 again, requiring her to miss school until December 2020. (*Id*. ¶¶ 40–41.) After YFT's discussions with YPS administrators, coverage temporarily improved before returning to near-zero levels. (Pl. Opp. at 4.)

Plaintiff alleges that during the 2020–2021 school year, Principal Hernandez treated her differently from other teachers by allowing other teachers to lock their classroom doors and close their curtains while pumping but denying her the same accommodations. (Compl. ¶ 45.) From January through June 2021, Plaintiff received inadequate classroom coverage and was unable to breast pump three or more times per week. (*Id*. ¶ 46.)

In September 2021, Defendant Ramirez was named the new principal of the school. (*Id*. ¶ 47.) On October 27, 2021, Principal Ramirez informed Plaintiff that Principal Hernandez had not submitted her tenure paperwork, which would extend Plaintiff's probationary period rather than granting tenure. (*Id*. ¶ 48.) YPS Human Resources sent Plaintiff an Extension Agreement to extend her probationary period. (*Id*. ¶ 49.) Plaintiff alleges that Principal Ramirez's actions continued the alleged discriminatory and retaliatory practices against her. (*Id*. ¶ 50.) Plaintiff did not sign the Extension Agreement and continued teaching past the November 1, 2021 probationary end date. (*Id*. ¶ 51.)

In February 2022, Plaintiff went on maternity leave for her second child and did not return for the remainder of the school year. (*Id*. ¶ 53.) On April 25, 2022, YPS Human Resources informed Plaintiff that her failure to sign the Extension Agreement by May 5, 2022 would result

in termination. (*Id*. ¶ 54.) Following advice from YFT, Plaintiff did not sign the agreement. (*Id*.) On May 13, 2022, Plaintiff received a termination letter explaining that a vote would be held regarding her firing. (*Id*. ¶ 56.) Following the Board of Education vote, Plaintiff was terminated effective July 15, 2022. (*Id*. ¶¶ 57–58.)

On November 10, 2022, Plaintiff filed an Article 78 Petition in New York State Supreme Court (the "Article 78 Proceeding"), seeking a declaration stating that she gained tenure by estoppel as of November 1, 2021, a finding that YPS violated Education Law, an injunction requiring compliance, reinstatement as of July 15, 2022, full back pay, seniority, benefits, and attorney's fees. (*Id*. ¶¶ 62–63.) Plaintiff did not allege that her termination was discriminatory or retaliatory based on her gender or pregnancy. (*Id*.) On May 23, 2023, the New York State Supreme Court determined that Plaintiff acquired tenure by estoppel because she worked past her probationary end date, reinstating her to her teaching position with tenure, back pay, and any other benefits to which she would have been entitled from the date her employment was terminated. (Pl. Opp. Ex. B.) During the pendency of the Article 78 Proceeding, on February 7, 2023, Plaintiff filed a charge with the Equal Employment Opportunity Commission ("EEOC") regarding alleged discrimination and retaliation. (Pl. Opp. at 3; Compl. ¶ 16.) She received a right-to-sue letter from the EEOC on March 25, 2024. (Pl. Opp. at 3.) Thereafter, Plaintiff commenced this action.

Based on the foregoing, Plaintiff brings claims under Title VII, alleging discriminatory treatment based on her gender and pregnancy. (*See generally* Compl.) She also invokes the NYSHRL, asserting that Defendants' actions constituted unlawful discrimination, hostile work environment, and retaliation. (*Id*.)

## PROCEDURAL HISTORY

4

Plaintiff commenced this action on May 10, 2024.  (ECF No. 1.)  Defendants moved to dismiss the Complaint on August 15, 2024.  (ECF No. 29, "Defs.' Mem.")  Plaintiff opposed the motion on September 9, 2024.  (ECF No. 34.)  Defendants filed a reply memorandum in further support of their motion on October 1, 2024.  (ECF No. 32, "Defs.' Reply.")

## LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(6), dismissal is proper unless the complaint "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  When there are well-pled factual allegations in the complaint, "a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief."  *Id.* at 679.  While the Court must take all material factual allegations as true and draw reasonable inferences in the non-moving party's favor, the Court is "not bound to accept as true a legal conclusion couched as a factual allegation," or to credit "mere conclusory statements" or "[t]hreadbare recitals of the elements of a cause of action."  *Id.* at 678 (quoting *Twombly*, 550 U.S. at 555).

The Second Circuit "deem[s] a complaint to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference… and documents that plaintiffs either possessed or knew about and upon which they relied in bringing the suit."  *Rotham v. Gregor*, 220 F.3d 81, 88 (2d Cir. 2000) (internal citations omitted).  The critical inquiry is whether a plaintiff has pled sufficient facts to nudge their claims "across the line from conceivable to plausible."  *Twombly*, 550 U.S. at 570.  A motion to dismiss will be denied where the allegations "allow[ ] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 556 U.S. at 678.

## DISCUSSION

Defendants move to dismiss the Complaint on multiple grounds: (1) failure to state a claim against the City of Yonkers because Plaintiff was not employed by the City; (2) the claims are time-barred, in whole or in part; (3) failure to plead the filing of the requisite notice of claim; (4) failure to state a claim of gender discrimination or retaliation against Defendants; and (5) that, upon dismissal of Plaintiff's federal claims under Title VII, the Court should decline to exercise supplemental jurisdiction over Plaintiff's remaining pendent state-law claims under the NYSHRL. (*See generally* Defs.' Mem.)  The Court addresses each claim in turn.

## I.  Title VII Claim

Plaintiff asserts a Title VII claim based on gender and pregnancy.  (*See generally* Compl.) Title VII prohibits employers from discriminating "against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin."  42 U.S.C. § 2000e-2(a)(1).  In adopting this language, "Congress intended to prohibit all practices in whatever form which create inequality in employment opportunity due to discrimination on the basis of race, religion, sex, or national origin."  *Banks v. Gen. Motors, LLC*, 81 F.4th 242, 269 (2d Cir. 2023).  For all Title VII purposes, discrimination based on a woman's pregnancy constitutes discrimination because of her sex.  *See Newport News Shipbuilding & Dry Dock Co. v. EEOC*, 462 U.S. 669, 684 (1983).

Among other arguments, Defendants contend that Plaintiff's allegations supporting her Title VII claim are procedurally barred as untimely.  (Defs.' Mem. 7–8.)  The Court agrees. Plaintiff's allegations are mostly time-barred, and the events that occurred within the statutory window do not survive the motion to dismiss.

### A.  Timeliness

The Court begins its analysis by discussing the timeliness of Plaintiff's allegations.  Before bringing a claim under Title VII, a plaintiff must file a timely charge of discrimination with the EEOC.  *See Byas v. Yonkers Public Schools*, 2025 WL 963977, at *6 (S.D.N.Y. Mar. 31, 2025).  New York is a deferral state, which allows a plaintiff to file discrimination charges within 300 days of the alleged unlawful employment practice, rather than the standard 180-day deadline used in many other states.  *See id*. (citing  *Zaja v. SUNY Upstate Med. Univ./Upstate Healthcare Ctr.*, 2022 WL 16834054, at *3 (N.D.N.Y. Nov. 9, 2022); 42 U.S.C. § 2000e-5(e)(1)).  However, an exception applies when the plaintiff experiences a "continuous practice and policy of discrimination." *Gomes v. Avco Corp.*, 964 F.2d 1330, 1333 (2d Cir. 1992) (quoting *Miller v. International Tel. & Tel. Corp.*, 755 F.2d 20, 25 (2d Cir. 1992)).  Under such circumstances, "the commencement of the statute of limitations period may be delayed until the last discriminatory act in furtherance of it." *Id*.  If a continuing violation is found, a court must then "consider all relevant actions allegedly taken pursuant to the employer's discriminatory policy or practice, including those that would otherwise be time barred."  *Snowden v. Southerton*, 2023 WL 3601654, at *7 (S.D.N.Y. May 23, 2023).  This doctrine is heavily disfavored in the Second Circuit and is applied only in "compelling circumstances."  *Falinski v. Kuntz*, 38 F. Supp. 2d 250, 257 (S.D.N.Y. 1999) (citing *Davis v. City Univ. of New York*, 1996 WL 243256, at *10 (S.D.N.Y. May 8, 1996)).

To establish a continuing violation, a plaintiff must demonstrate (1) that the employer engaged in an ongoing discriminatory policy or practice, or (2) that the related discriminatory acts occurred over time, were left unremedied, and collectively constitute a discriminatory policy or practice.  *See Falinski*, 38 F. Supp. 2d at 257 (quoting *Cornwell v. Robinson*, 23 F.3d 694, 704 (2d Cir. 1994)).  The doctrine does not apply to isolated or discrete acts of discrimination unrelated to any broader policy or mechanism.  *Id*.  "Examples of discrete acts, for the purposes of the

continuing violation doctrine, include disparate disciplining, negative performance reviews, termination, failure to promote, and denial of a preferred job position." *Zoulas v. N.Y.C. Dep't of Educ.*, 400 F. Supp. 3d 25, 50 (S.D.N.Y. 2019).

Here, Plaintiff filed her EEOC charge on February 7, 2023. (Pl. Opp. at 3.) Under Title VII, a plaintiff must file an employment discrimination charge with the EEOC no later than 300 days after the alleged unlawful employment practice occurred. *See* 42 U.S.C. § 2000e–5(e)(1); *Richardson v. Hartford Pub. Libr.*, 404 F. App'x 516, 517 (2d Cir. 2010). Accordingly, only conduct occurring on or after April 13, 2022, falls within the applicable 300-day window. Plaintiff's allegations against Principal Hernandez occurred well beyond the 300-day window. The allegations regarding Principal Hernandez reflect misdeeds occurring during the 2019–2020 and 2020–2021 school years, ending in June 2021. These relate to her failure to provide an accommodation, including classroom coverage, to allow Plaintiff to express breast milk. (*See* Compl. ¶¶ 26–45.) Plaintiff's allegations against Principal Ramirez fare no better. They arise from the failure to provide tenure, as discussed on October 27, 2021, and from recommending that Plaintiff's probationary period be extended an additional six months. (*Id*. ¶ 48.)

Only two of Plaintiff's allegations do not predate the April 13, 2022 cutoff: (1) YPS Human Resources' April 2022 letter to Plaintiff requesting that she sign and return the probation Extension Agreement by May 5, 2022; and (2) the YPS Board of Education's May 2022 vote to terminate Plaintiff's employment effective July 15, 2022, which led to the issuance of Plaintiff's termination letter. (*See* Defs.' Mem. at 3.) Standing alone, these allegations appear isolated and discrete. *See Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 114 (2002) ("Discrete acts such as termination, failure to promote, denial of transfer, or refusal to hire are easy to identify.").

Therefore, these allegations are insufficient to invoke the continuing-violation doctrine. *See, e.g.*, *Langella v. Mahopac Cent. Sch. Dist.*, 2020 WL 2836760, at \*5–6 (S.D.N.Y. May 31, 2020) (explaining that the continuing-violation doctrine does not apply to isolated or discrete acts). Multiple discrete incidents of discrimination, even similar ones, that are not the result of a discriminatory policy or mechanism, do not constitute a continuing violation. *Flores v. Entergy Nuclear Operations, Inc.*, 313 F. Supp. 3d 511, 525 (S.D.N.Y. 2018). Because Plaintiff has not alleged facts causally connecting or relating these incidents to a discriminatory policy or practice, no continuing violation can be established, and the 300-day statute of limitations applies. Consequently, any conduct occurring before April 13, 2022, is time-barred and will not be considered by the Court in evaluating Defendants' motion to dismiss.

**B. Discrete Acts**

Despite all but two of Plaintiff's allegations being time-barred, the U.S. Supreme Court has clarified that a single discrete act may give rise to a Title VII claim. *See Morgan*, 536 U.S. at 114 ("Each incident of discrimination and each retaliatory adverse employment decision constitutes a separate actionable 'unlawful employment practice.'"). Here, the Court must consider whether the conduct occurring within the statutory window is sufficient to plausibly state a Title VII claim. Specifically, the Court evaluates whether the act of receiving notice that the Extension Agreement had not been signed, the notice that Plaintiff would be subject to termination if she did not sign the Extension Agreement, and the subsequent Board vote to terminate Plaintiff, are sufficient to state a Title VII claim.

To state a claim for employment discrimination under Title VII, a plaintiff must allege facts giving rise to a plausible inference that (1) she is a member of a protected class; (2) she was qualified for her position; (3) she suffered an adverse employment action; and (4) the action

occurred under circumstances giving rise to an inference of discrimination.  *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 83 (2d Cir. 2015).  To establish an inference of intentional discrimination, a plaintiff must plausibly allege facts providing a reasonable inference of discriminatory animus and/or that she was treated differently from individuals "similarly situated in all material respects."  *Brown v. Daikin Am., Inc.*, 756 F.3d 219, 230 (2d Cir. 2014) (citing *Graham v. Long Island R.R.*, 230 F.3d 34, 39 (2d Cir. 2000)).  Although a plaintiff need only show that her protected characteristic was a "motivating factor" in the alleged discriminatory conduct, *Desert Palace, Inc. v. Costa*, 539 U.S. 90, 101 (2003), the Complaint here contains no factual allegations plausibly connecting Plaintiff's failure to obtain tenure to discriminatory intent or retaliation.

The Complaint specifically fails to plausibly link Defendants' request that Plaintiff sign the Extension Agreement, the notice regarding the potential termination of her probationary employment, and the Board's vote to terminate her, to her protected status.  Instead, Plaintiff relies on the general belief that Defendants' conduct must have resulted from discriminatory intent and retaliation.  (*See* Compl. ¶ 56.)  Conclusory allegations, without more, do not support an inference of discriminatory animus.  *See Vega*, 801 F.3d at 87 (noting that at the pleadings stage, a Title VII plaintiff must plead sufficient facts to support a plausible inference of discrimination).  Plaintiff offers only conclusory assertions that the extension notice and subsequent vote to terminate her employment were "entirely retaliatory."  (Compl. ¶ 56.)  When evaluating the three events occurring within the statutory window, Plaintiff has not established that any of these acts give rise to a plausible Title VII claim.

Accordingly, because Plaintiff fails to allege facts giving rise to a plausible inference of discriminatory motivation, the Court dismisses Plaintiff's Title VII claim without prejudice.

## II.  State Law Claims (NYSHRL)

With Plaintiff's federal claims dismissed, the Court declines to exercise supplemental jurisdiction over Plaintiff's state-law claims.  *See* 28 U.S.C. § 1367(c) (allowing a district court to decline supplemental jurisdiction if it "has dismissed all claims over which it has original jurisdiction").  Accordingly, Plaintiff's NYSHRL claims are dismissed without prejudice.

## III. Preclusion Principles

Defendants likewise assert that the claims in this action should be dismissed because they could have and should have been asserted in the Article 78 Proceeding.  (Defs.' Mem. at 5.)  More specifically, they contend that Plaintiff is estopped from bringing these claims.  (*Id*.)  As applicable here, such an assertion lacks merit.

Pursuant to Rule 12(b)(6), a claim may be dismissed under the doctrine of res judicata where "it is clear from the face of the complaint[] and matters of which the court may take judicial notice, that the plaintiff's claims are barred as a matter of law."  *Conopco, Inc. v. Roll Int'l*, 231 F.3d 82, 86 (2d Cir. 2000).  The doctrine of res judicata bars re-litigation if "(1) the previous action involved an adjudication on the merits; (2) the previous action involved the plaintiffs or those in privity with them; [and] (3) the claims asserted in the subsequent action were, or could have been, raised in the prior action."  *Soules v. Connecticut, Dep't of Emergency Servs. & Pub. Prot.*, 882 F.3d 52, 55 (2d Cir. 2018) (citing *Monahan v. New York City Dep't of Corr.*, 214 F.3d 275, 285 (2d Cir. 2000)).  Moreover, "res judicata and collateral estoppel apply once final judgment is entered in a case, even while an appeal from that judgment is pending."  *Chariot Plastics, Inc. v. United States*, 28 F. Supp. 2d 874, 881 (S.D.N.Y. 1998) (citing *Petrella v. Siegel*, 843 F.2d 87, 90 (2d Cir. 1988)).

Under New York law, the doctrine of collateral estoppel applies to a prior Article 78 proceeding, precluding relitigating in a subsequent action of issues previously raised. *Parker v. Blauvelt Volunteer Fire Co.*, 93 N.Y.2d 343, 349–50 (1999). Stated differently, collateral estoppel bars the relitigating of an issue of law or fact actually litigated and decided by a court of competent jurisdiction in a prior action between the parties or their privies. *Constantine v. Tchrs. Coll.*, 448 F. App'x 92, 93 (2d Cir. 2011) (quoting *Ali v. Mukasey*, 529 F.3d 478, 489 (2d Cir. 2008)).

Article 78 proceedings differ from ordinary civil plenary actions in that they are limited and expedited "summary procedure." *Whitfield v. City of New York*, 96 F.4th 504, 520 (2d Cir. 2024) (quoting *Coma Realty Corp. v. Davis*, 200 A.D.3d 975, 2d Dep't 2021); *see also Davidson v. Capuano*, 792 F.2d 275, 280 (2d Cir. 1986). Because an Article 78 court is limited to injunctive relief or annulling a determination and does not generally award damages, it cannot grant the type of relief available in a Title VII action. *Whitfield*, 96 F.4th at 520. In such a situation, res judicata is inapplicable. A plaintiff in a Title VII action, such as here, may be entitled to punitive damages upon a showing that the employer engaged in intentional discrimination with malice or with reckless indifference to the rights of an aggrieved party. *Zimmermann v. Assoc. First Capital Corp.*, 251 F.3d 376, 384 (2d Cir. 2001) (internal citations omitted). Similarly, a prevailing party may be entitled to damages for future pecuniary and nonpecuniary losses, subject to statutory caps that vary with the size of the employer. *Id*. It is only when the issues in question were actually and necessarily decided in a prior proceeding, and a party had a full opportunity to litigate those issues, that findings within a New York State Article 78 proceeding may have collateral estoppel effect. *Constantine v. Teachers College*, 448 Fed. Appx. 92, 93–96 (2d Cir. 2011). Once a party chooses to litigate claims in an Article 78 proceeding, that party generally risks being collaterally

12

estopped from seeking relief in a subsequent proceeding. *See Giakoumelos v. Coughlin*, 88 F.3d 56, 60 (2d Cir. 1996).

Here, Defendants assert that Plaintiff commenced an Article 78 Proceeding seeking review of the YSD's denial of tenure and her subsequent termination. (Defs.' Mem. at 5.) Specifically, Plaintiff sought, *inter alia*, a declaration stating that she had acquired tenure by estoppel, reinstatement as a tenured teacher, and back pay. (Compl. ¶¶ 62–63; Pl. Opp. Ex. B.) In support, Defendants submit a copy of the New York State Supreme Court, Westchester County, Opinion and Order, dated May 23, 2023, wherein the court determined that the school district improperly withheld tenure, that Plaintiff had acquired tenure by estoppel, and reinstated Plaintiff as a tenured teacher with back pay. (Defs.' Mem. Ex. B.) Although Plaintiff was awarded incidental damages in the Article 78 proceeding, the court did not have authority to award punitive damages, a permissible award in a Title VII action. Accordingly, to the extent Plaintiff may be entitled to additional damages unavailable in the Article 78 proceeding, res judicata is inapplicable.[1]

## CONCLUSION

For the foregoing reasons, the motion to dismiss filed by Defendants City of Yonkers, Yonkers School District, Robert C. Dodson Elementary School, Isabella Hernandez, Romulo Ramirez, and Dr. Edwin M. Quezada is GRANTED, without prejudice, as to Plaintiff's Title VII claims. Because Plaintiff's federal claims are dismissed, the Court, in its discretion, declines to exercise supplemental jurisdiction over the state law claims. Plaintiff is granted leave to file an Amended Complaint, consistent with this Order, on or before May 11, 2026. Plaintiff is advised that the Amended Complaint will replace, not supplement, the original Complaint, and any claims Plaintiff wishes to pursue must be included in, or attached to, the Amended Complaint. Should

---

[1] The Court's res judicata analysis is limited to Plaintiff's Title VII claims.

13

Plaintiff file an Amended Complaint, Defendants are directed to answer or otherwise respond to the Second Amended Complaint by June 5, 2026.

If Plaintiff fails to file an Amended Complaint within the time allowed, any claims dismissed without prejudice by this Order will be deemed dismissed with prejudice, and the case will be terminated. The Clerk of Court is respectfully directed to terminate the motion at ECF No. 29.

SO ORDERED,

Dated: March 30, 2026
       White Plains, NY

_____
Nelson S. Román, U.S.D.J.